# TRAFFICANTE et al. v. METROPOLITAN LIFE INSURANCE CO. et al.

No. 71–708.  Argued November 7, 1972—Decided December 7, 1972

Douglas, J., delivered the opinion for a unanimous Court. White, J., filed a concurring opinion, in which Blackmun and Powell, JJ., joined, *post*, p. 212.

*Stephen V. Bomse* argued the cause for petitioners. With him on the briefs were *George H. Clyde, Jr.,* and *Margaret D. Brown.*

*Richard J. Kilmartin* argued the cause and filed a brief for Metropolitan Life Insurance Co. *Robert M. Shea* argued the cause and filed a brief for respondent Parkmerced Corp.

*Deputy Solicitor General Wallace* argued the cause
for the United States as *amicus curiae* urging reversal.
With him on the brief were *Solicitor General Griswold,
Assistant Attorney General Norman,* and *Frank E.
Schwelb.* Briefs of *amici curiae* urging reversal were
filed by *Robert Keith Booth, Jr.,* for the City of Palo
Alto, California, and by *Jack Greenberg, James M. Nabrit
III, Charles Stephen Ralston, Michael Davidson, William
Bennett Turner,* and *Alice Daniel* for the NAACP Legal
Defense and Educational Fund, Inc.

MR. JUSTICE DOUGLAS delivered the opinion of the
Court.

Two tenants of Parkmerced, an apartment complex in
San Francisco housing about 8,200 residents, filed sepa-
rate complaints with the Secretary of Housing and Urban
Development (HUD) pursuant to § 810 (a) [1] of the Civil
Rights Act of 1968, 82 Stat. 85, 42 U. S. C. § 3610 (a). One
tenant is black, one white. Each alleged that the owner [2]

---

[1] Section 810 (a) of the Act provides in relevant part: .

"Any person who claims to have been injured by a discriminatory
housing practice or who believes that he will be irrevocably injured
by a discriminatory housing practice that is about to occur (here-
after 'person aggrieved') may file a complaint with the Secretary.
Complaints shall be in writing and shall contain such information
and be in such form as the Secretary requires. Upon receipt of
such a complaint the Secretary shall furnish a copy of the same
to' the person or persons who allegedly committed or are about to
commit the alleged discriminatory housing practice. Within thirty
days after receiving a complaint, or within thirty days after the ex-
piration of any period of reference under subsection (c), the Sec-
retary shall investigate the complaint and give notice in writing
to the person aggrieved whether he intends to resolve it. If the
Secretary decides to resolve the complaint, he shall proceed to try
to eliminate or correct the alleged discriminatory housing practice
by informal methods of conference, conciliation, and persuasion."

[2] The owner at the time the suit was started was Metropolitan
Life Ins. Co. After the suit was commenced, Parkmerced Corp.

of Parkmerced had discriminated against nonwhites on the basis of race in the rental of apartments within the complex in violation of § 804 of the Act.

HUD, pursuant to § 810 (c) of the Act,[3] notified the appropriate California state agency of the complaints and the state agency, for lack of adequate resources to handle the complaints, referred the charge back to HUD. Since HUD failed to secure voluntary compliance within 30 days, petitioners brought this action in the District Court under § 810 (d) of the Act.[4]

The complaint alleged that the owner had discriminated against nonwhite rental applicants in numerous

---

acquired the apartment complex from Metropolitan, and it was joined as a defendant.

[3] Section 810 (c) provides:

"Wherever a State or local fair housing law provides rights and remedies for alleged discriminatory housing practices which are substantially equivalent to the rights and remedies provided in this title, the Secretary shall notify the appropriate State or local agency of any complaint filed under this title which appears to constitute a violation of such State or local fair housing law, and the Secretary shall take no further action with respect to such complaint if the appropriate State or local law enforcement official has, within thirty days from the date the alleged offense has been brought to his attention, commenced proceedings in the matter, or, having done so, carries forward such proceedings with reasonable promptness. In no event shall the Secretary take further action unless he certifies that in his judgment, under the circumstances of the particular case, the protection of the rights of the parties or the interests of justice require such action."

[4] Section 810 (d) provides in relevant part:

"If within thirty days after a complaint is filed with the Secretary or within thirty days after expiration of any period of reference under subsection (c), the Secretary has been unable to obtain voluntary compliance with this title, the person aggrieved may, within thirty days thereafter, commence a civil action in any appropriate United States district court, against the respondent named in the complaint, to enforce the rights granted or protected by this title, insofar as such rights relate to the subject of the complaint."

ways, *e. g.,* making it known to them that they would not be welcome at Parkmerced, manipulating the waiting list for apartments, delaying action on their applications, using discriminatory acceptance standards, and the like.

They—the two tenants—claimed they had been injured in that (1) they had lost the social benefits of living in an integrated community; (2) they had missed business and professional advantages which would have accrued if they had lived with members of minority groups; (3) they had suffered embarrassment and economic damage in social, business, and professional activities from being "stigmatized" as residents of a "white ghetto." [5]

The District Court did not reach the merits but only held that petitioners were not within the class of persons entitled to sue under the Act. 322 F. Supp. 352. The Court of Appeals affirmed, construing § 810 (a) narrowly to permit complaints only by persons who are the objects of discriminatory housing practices. 446 F. 2d 1158. The case is here on a petition for a writ of certiorari, which we granted, 405 U. S. 915. We reverse the judgment below.

The definition of "person aggrieved" contained in § 810 (a)[6] is in terms broad, as it is defined as "[a]ny person who claims to have been injured by a discriminatory housing practice."

The Act gives the Secretary of HUD power to receive and investigate complaints regarding discriminatory housing practices. The Secretary, however, must defer to state agencies that can provide relief against the named practice. If the state agency does not act, the Secretary may seek to resolve the controversy by confer-

---

[5] Less than 1% of the tenants in this apartment complex are black.

[6] Note 1, *supra.*

ence, conciliation, or persuasion. If these attempts fail, the complainant may proceed to court pursuant to § 810 (d).[7] Moreover, these rights may be enforced "by civil actions in appropriate United States district courts without regard to the amount in controversy," if brought within 180 days "after the alleged discriminatory housing practice occurred." § 812 (a). In addition, § 813 gives the Attorney General authority to bring a civil action in any appropriate United States district court when he has reasonable cause to believe "that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted" by the Act.

It is apparent, as the Solicitor General says, that complaints by private persons are the primary method of obtaining compliance with the Act. *Hackett* v. *McGuire Bros., Inc.*, 445 F. 2d 442 (CA3), which dealt with the phrase that allowed a suit to be started "by a person claiming to be aggrieved" under the Civil Rights Act of 1964, 42 U. S. C. § 2000e–5 (a), concluded that the words used showed "a congressional intention to define standing as broadly as is permitted by Article III of the Constitution." *Id.*, at 446. With respect to suits brought under the 1968 Act,[8] we reach the same conclusion, insofar as tenants of the same housing unit that is charged with discrimination are concerned.

The language of the Act is broad and inclusive. Individual injury or injury in fact to petitioners, the ingredient found missing in *Sierra Club* v. *Morton*, 405 U. S. 727, is alleged here. What the proof may be is one thing; the alleged injury to existing tenants by exclusion

---

[7] Note 4, *supra*.

[8] We find it unnecessary to reach the question of standing to sue under 42 U. S. C. § 1982 which is the basis of the third cause of action alleged in the petition but based on the same allegations as those made under the Civil Rights Act of 1968.

of minority persons from the apartment complex is the loss of important benefits from interracial associations.

The legislative history of the Act is not too helpful. The key section now before us, *i. e.*, § 810, was derived from an amendment offered by Senator Mondale and incorporated in the bill offered by Senator Dirksen.[9] While members of minority groups were damaged the most from discrimination in housing practices, the proponents of the legislation emphasized that those who were not the direct objects of discrimination had an interest in ensuring fair housing, as they too suffered.[10]

The Assistant Regional Administrator for HUD wrote petitioners' counsel on November 5, 1970, that "it is the determination of this office that the complainants are aggrieved persons and as such are within the jurisdiction" of the Act. We are told that that is the consistent administrative construction of the Act. Such construction is entitled to great weight. *Udall* v. *Tallman,* 380 U. S. 1, 16; *Griggs* v. *Duke Power Co.,* 401 U. S. 424, 433–434.

The design of the Act confirms this construction. HUD has no power of enforcement. So far as federal agencies are concerned only the Attorney General may sue; yet, as noted, he may sue only to correct "a pattern or practice" of housing discrimination. That phrase "a pattern or practice" creates some limiting factors in

---

[9] The Dirksen substitute, 114 Cong. Rec. 4570–4573 retained the present language of § 810 (a) which Senator Mondale had previously introduced, *id.*, at 2270, and it was in the bill passed by the Senate, *id.*, at 5992, which the House subsequently passed, *id.*, at 9621.

The "aggrieved person" provision that was in Senator Mondale's bill and carried into the Dirksen bill can be found *id.*, at 2271 (§ 11 (a) of the Mondale bill).

[10] See Hearings before the Subcommittee on Housing and Urban Affairs of the Senate Committee on Banking and Currency on S. 1358, S. 2114, and S. 2280, 90th Cong., 1st Sess. (1967).

his authority which we need not stop to analyze. For, as the Solicitor General points out, most of the fair housing litigation conducted by the Attorney General is handled by the Housing Section of the Civil Rights Division, which has less than two dozen lawyers. Since HUD has no enforcement powers and since the enormity of the task of assuring fair housing makes the role of the Attorney General in the matter minimal, the main generating force must be private suits in which, the Solicitor General says, the complainants act not only on their own behalf but also "as private attorneys general in vindicating a policy that Congress considered to be of the highest priority." The role of "private attorneys general" is not uncommon in modern legislative programs. See *Newman* v. *Piggie Park Enterprises,* 390 U. S. 400, 402; *Allen* v. *State Board of Elections,* 393 U. S. 544, 556; *Perkins* v. *Matthews,* 400 U. S. 379, 396; *J. I. Case Co.* v. *Borak,* 377 U. S. 426, 432. It serves an important role in this part of the Civil Rights Act of 1968 in protecting not only those against whom a discrimination is directed but also those whose complaint is that the manner of managing a housing project affects "the very quality of their daily lives." *Shannon* v. *United States Dept. of Housing & Urban Dev.,* 436 F. 2d 809, 818 (CA3).

The dispute tendered by this complaint is presented in an adversary context. *Flast* v. *Cohen,* 392 U. S. 83, 101. Injury is alleged with particularity, so there is not present the abstract question raising problems under Art. III of the Constitution. The person on the landlord's blacklist is not the only victim of discriminatory housing practices; it is, as Senator Javits said in supporting the bill, "the whole community," 114 Cong. Rec. 2706, and as Senator Mondale who drafted § 810 (a) said, the reach of the proposed law was to replace the ghettos "by truly integrated and balanced living patterns." *Id.,* at 3422.

We can give vitality to § 810 (a) only by a generous construction which gives standing to sue to all in the same housing unit who are injured by racial discrimination in the management of those facilities within the coverage of the statute.

We reverse and remand the case to the District Court, leaving untouched all other questions, including the suggestion that the case against Metropolitan Life Insurance Co. has become moot.

*Reversed and remanded.*

MR. JUSTICE WHITE, with whom MR. JUSTICE BLACKMUN and MR. JUSTICE POWELL join, concurring.

Absent the Civil Rights Act of 1968, I would have great difficulty in concluding that petitioners' complaint in this case presented a case or controversy within the jurisdiction of the District Court under Art. III of the Constitution. But with that statute purporting to give all those who are authorized to complain to the agency the right also to sue in court, I would sustain the statute insofar as it extends standing to those in the position of the petitioners in this case. Cf. *Katzenbach* v. *Morgan,* 384 U. S. 641, 648–649 (1966); *Oregon* v. *Mitchell,* 400 U. S. 112, 240, 248–249 (1970). Consequently, I join the Court's opinion and judgment.