**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Robert Joseph BERENT et al., Defendants-Appellees.**

**No. 75–1325**

United States Court of Appeals, Ninth Circuit.

Sept. 30, 1975.

Rehearing and Rehearing En Banc Denied Dec. 17, 1975.

---

William G. Otis, Crim. Div., Dept. of Justice (argued), Washington, D. C., for plaintiff-appellant.

Gary Logan (argued), Las Vegas, Nev., for defendants-appellees.

OPINION

Before CHAMBERS, ELY and HUF-STEDLER, Circuit Judges.

CHAMBERS, Circuit Judge:

The only issue in this case is whether making book on the outcome of sporting

events other than horseracing is one of the gambling activities illegal under Nevada law unless a license has first been obtained. If it is not, then such bookmaking is not a gambling business which is "a violation of the law of a State" under 18 U.S.C. § 1955(b)(1)(i), and the district court was correct in dismissing the indictment of appellees under that section.

By Nev.Rev.Stat. § 463.160 (1973), it is unlawful for any person to "conduct or maintain any horserace book or sports pool" without procuring the necessary licenses. The government's argument is that the term "sports pool" as understood under the Nevada statute covers all methods of gambling on the outcome of sporting events, including bookmaking.[1] Construing this criminal statute narrowly, as we must, we cannot accept this contention. In common usage the term "pool" connotes a particular gambling practice, an arrangement whereby all bets constitute a common fund to be taken by the winner or winners. This is distinct from the practice of bookmaking. Compare 2 Encyclopedia Britannica (Micropaedia), 154 (15th ed. 1974), with 8 id. 116. Given the statute's separate reference to "horserace book," we conclude the term "pool" was used in this ordinary, limited sense and not as the catchall provision argued for by the government.

Our conclusion is unaltered by the Nevada Gaming Commission's regulation giving the term a broader definition. While the Commission may have the power to elaborate upon the meaning of vague or technical terms, no authorities have been advanced to suggest that the Commission may give to a statutory term plainly used in its ordinary sense a wholly different definition.

The district court's decision dismissing the indictment is affirmed.

1. Under the version of the statute in effect when the events alleged in the indictment occurred, the term "sports pool" was not defined. After the district court's decision in this case, a section was added defining "sports pool" to mean "the business of accepting wagers on sporting events by any system or method of wagering other than the system known as the pari-mutuel method of wagering," ch. 452, § 1 [1975] Stats. of Nev. (May 14, 1975). This provision went into effect on July 1, 1975.

HUFSTEDLER, Circuit Judge (dissenting):

Defendants were indicted for making book on sporting events, other than horseracing, in violation of 18 U.S.C. § 1955,[1] which creates a federal crime for conducting a gambling business that is illegal under the law of a state in which it is carried on. Under the relevant Nevada law,

It is unlawful for any person . . . to operate, carry on, conduct or maintain any horserace pool or sports pool . . . without having first procured . . . all federal, state, and municipal gaming licenses as required by statute or ordinance. (Nev.Rev. Stat. § 463.160.)

The Nevada Gaming Commission, acting pursuant to its statutory power (Nev.Rev.Stat. § 463.150)[2], has defined the term "sports pool" in Gaming Control Board Regulation 22.015(9):

"Sports pool" means any person who is a bookmaker catering to, or specializing in, the acceptance of wagers upon the outcome of any professional or amateur athletic sporting event.

Defendants concede that they were engaged in unlicensed sports bookmaking, but they contend, and the majority agrees, that the statutory term "sports pool" has a plain meaning that excludes sports bookmaking. The majority's conclusion cannot be reconciled with the record.

In addition to citing the administrative regulation that expressly includes sports bookmaking within the term "sports pool," the Government submitted two Nevada Gaming Commission opinions in which disciplinary action was taken against a licensed sports *bookmaking* operation which did not comply with all regulations pertaining to "sports pools." The Government also filed thirteen affidavits in opposition to the defendants' motion to dismiss the indictment. The affiants were persons engaged in the Nevada gambling industry as participants[3] or as members of Nevada's Gaming Commission or Gaming Control Board. They each attested that the term "sports pool" has a plain meaning in Nevada that includes sports bookmaking. Finally, the Government cited an opinion of Nevada's Attorney General that sports bookmaking is included within "sports pool."

The common meaning ascribed by encyclopedia writers or gamblers generally to the term "pool" is not relevant. The issue is the meaning of "sports pool" as used by the Nevada legislature in controlling the gambling industry within that state.[4] If ever there were any ambiguity in the term "sports pool" in Nevada, it was eliminated when the Nevada Gambling Commission expressly defined the term to include sports bookmaking. That construction was reasonable. It was expressly adopted by the Nevada legislature after this indictment

---

1. Section 1955 provides in relevant part that:
   (a) Whoever conducts . . . an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.
   (b) As used in this section—
   (1) 'illegal gambling business' means a gambling business which—
   (i) is a violation of the law of a State . . . in which it is conducted . . .

2. Under Nev.Rev.Stat. § 463.150, the Nevada Gaming Commission:
   1. . . . is empowered and shall, from time to time, adopt, amend or repeal such regulations, consistent with the policy, objects and purposes of this chapter as it may deem necessary or desirable in the public interest in carrying out the policy and provisions of this chapter.

2. Such regulations shall, without limiting the general powers herein conferred, include the following:

   .     .     .     .     .

   (g) Defining and limiting the area, games and devices permitted, and the method of operation of such games and devices for the purposes of this chapter.

3. One of the affiants was a licensed bookmaker and another, a managing director of the Nevada Resort Association.

4. Neither the majority opinion nor the brief for the appellees (in its extensive discussion of the differences between pool selling and bookmaking) suggests any reason why the Nevada legislature would have intended to exempt sports bookmaking from the state's regulation while including sports pool selling.

was dismissed. It accorded with the formal and informal opinions of the Attorney General and of various administrative officers charged with the responsibility of enforcing the state's gaming laws.[5]

We have no reason for refusing to defer to the uniform administrative construction of Nevada's gaming law. But even if the administrative construction did not bind us, that interpretation is entitled to substantial weight. (*E.g., Trafficante v. Metropolitan Life Ins. Co.* (1972) 409 U.S. 205, 210, 93 S.Ct. 364, 34 L.Ed.2d 415; *Udall v. Tallman* (1965) 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616; *Oliver v. Spitz* (1960) 76 Nev. 5, 348 P.2d 158, 161; *see Broadrick v. Oklahoma* (1973) 413 U.S. 601, 617–18, 93 S.Ct. 2908, 37 L.Ed.2d 830; *Law Students Civil Rights Research Council, Inc. v. Wadmond* (1971) 401 U.S. 154, 163, 91 S.Ct. 720, 27 L.Ed.2d 749.) Giving the appropriate weight to the administrative interpretation of the statute, it is evident that we cannot properly conclude that the plain meaning was exactly opposite to the construction that the administrative officers had placed upon it.

The majority's reliance on the salutary canon of construction that criminal statutes are to be strictly construed is puzzling. If the meaning of the statute is plain, as the majority insists, reference to the canon is irrelevant. The canon, of course, can never be relied upon to import an ambiguity that does not otherwise exist, nor can it be used to locate a plain meaning contrary to that which is found in the Nevada legislature's dictionary.

I would reverse with directions to reinstate the indictment.

---

**5.** In an analogous situation, the Second Circuit concluded that the term "pool selling" included bookmaking. *United States ex rel. Rafanel-lo v. Hegstrom* (2d Cir. 1964) 336 F.2d 364, 365.