Clara TAYLOR, on her own behalf and on behalf of all others similarly situated, and the Tenants Steering Committee, Plaintiffs,

v.

James E. KERR, Executive Director of the Housing Authority of the City of Durham, North Carolina, et al., Defendants.

No. C–74–151–D.

United States District Court, M. D. North Carolina, Durham Division.

March 2, 1977.

Denison Ray and Adrienne Fox, of the Legal Aid Society, Durham, N. C., for plaintiffs.

Daniel K. Edwards, Durham, N. C., for defendants except Carla Hills, who is represented by the United States Attorney's Office.

## MEMORANDUM AND ORDER

GORDON, Chief Judge.

This matter is before the Court on a motion to intervene as plaintiffs by Fibbie Smith and Dorothy Wearing, who claim to be members of the aggrieved class, and on motions by all of the defendants except Carla Hills to deny intervention by Smith and Wearing and to dismiss the cause of action brought by plaintiffs Clara Taylor and the Tenants Steering Committee against them.

The issues presently before the Court must be placed in perspective through a brief review of prior proceedings in this case:

—The plaintiffs Clara Taylor and the Tenants Steering Committee filed their initial complaint on May 17, 1974, challenging the procedure used by the Housing Authority of the City of Durham in accepting tenants off its waiting list of applicants eligible for housing.

—On August 8, 1975, the United States Department of Housing and Urban Development issued an interim rule requiring the Housing Authority of the City of Durham to adjust its rent-rate schedule and admission policies.

—On February 26, 1976, the Court denied the plaintiffs' motion for class action status, without prejudice to the plaintiffs to renew their motion at a later time.

—On August 20, 1976, plaintiff Taylor was accepted for admission as a tenant in a public housing unit, after over four years on the waiting list of the housing authority.

—On September 20, 1976, Smith and Wearing filed a motion to intervene as plaintiffs and as named representatives of the class which Taylor claimed to represent when the suit was initially filed.

In order to resolve the matters now before the Court, it is necessary to consider the status at this time of (1) the plaintiff Taylor, (2) the Tenants Steering Committee, (3) the class action claims of the plaintiffs, and (4) the petitioners for intervention Smith and Wearing. The plaintiffs are seeking injunctive relief under the provisions of § 1983 of Title 42 of the United States Code in order to prevent the defendants from enforcing a rent-range formula that allegedly serves to accelerate entry into public housing in Durham by qualified citizens who can afford to pay higher rates and to delay entry by poorer qualified citizens who cannot.

Prior to August, 1975, the procedures used by the housing authority were ones developed by the authority to establish a priority among applicants waiting for admission as tenants. These procedures were

revised subsequent to August, 1975, in an attempt to comply with the interim rule issued on August 8, 1975, by the United States Department of Housing and Urban Development. Both sets of procedures were designed to achieve a mix of low-income occupants in Durham public housing, in part so that rental income, coupled with governmental subsidies and other income, would be sufficient to prevent the housing authority from operating at a loss and to permit it to act in accordance with the relevant laws and regulations governing public housing.

The plaintiffs contend that these procedures discriminated, and continue to discriminate, against the poorest members of the community who can least afford decent private housing. This, they claim, violates the civil rights of those who remain on eligibility waiting lists for years while others who can afford to pay higher rent are given preference when vacancies occur in housing authority units. The defendants deny that their policies violate the provisions of 42 U.S.C. § 1983. While the contentions raised in this action are admittedly proper matters to be brought before a federal district court, the defendants contend that the two named plaintiffs lack standing to sue and that the case is not in such a posture as to permit the two proposed intervenors to intervene as plaintiffs.

### Standing of Named Plaintiffs

■ With Clara Taylor's admission into a public housing authority apartment as a tenant on August 20, 1976, counsel for the parties are in agreement that her individual claims are now moot. While the plaintiffs note that it would be theoretically possible for the defendants to continue to thwart attacks on the authority's procedures by admitting individual plaintiffs one by one as their suits near trial, there is no contention by the plaintiffs that, in granting plaintiff Taylor an apartment, the defendants acted in bad faith or did so for the purpose of avoiding this litigation.

The defendants claim that the other named plaintiff, the Tenants Steering Committee, also lacks standing to sue because it does not represent persons on the authority's waiting list who can claim any injury from the procedures in question. The plaintiffs disagree, asserting that the committee is made up of housing authority tenants elected by their fellow residents to represent the interests of present and future housing authority occupants. Yet the committee can represent future residents only after they have first been admitted into residency, in which case their claims as individual plaintiffs would have become moot.

The plaintiffs cite *Trafficante v. Metropolitan Life Insurance Company et al.*, 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), in support of their contention that the committee has standing to sue. In *Trafficante* the Supreme Court held that tenants of an apartment complex who alleged that because of their landlord's discrimination against nonwhites they lost the social benefits of living in an integrated community, missed business and professional advantages that would have accrued from living with members of minority groups, and suffered from being stigmatized as residents of a "white ghetto" came within the definition of "persons aggrieved" in the Civil Rights Act of 1968, and, therefore, these white tenants had standing to sue.

■ The decision in *Trafficante*, however, focused upon the specific terms of the Civil Rights Act of 1968. In § 810(a) of the Act "persons aggrieved" are defined as "any person who claims to have been injured by a discriminatory housing practice." The injury suffered in *Trafficante* was grounded on a charge of race discrimination, not economic discrimination, and economic discrimination is not enough in itself to cause a violation of the fair housing provisions of the Civil Rights Act of 1968. *Village of Arlington Heights et al. v. Metropolitan Housing Development et al.,* —— U.S. ——, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Further, the present suit is not being brought under the Civil Rights Act of 1968 but rather under the provisions of 42 U.S.C. § 1983.

■ The defendants contend that the Tenants Steering Committee has failed to allege sufficient injury to entitle it to standing in this case. It is difficult to rationally interpret the provisions of § 1983 to guarantee as a right that a low-income tenant in a public housing project have a larger number of still lower income citizens as fellow tenants. Even for the current members of the tenants committee who fall in the lowest income group, § 1983 does not offer them a means to increase the number of their sub-group within the total number of tenants, at the expense of others who are slightly more affluent but who still qualify as low-income persons eligible for housing.

The steering committee has not satisfied the personal injury or "case or controversy" requirement of Article III of the Constitution of the United States and the standing requirements recognized by the Supreme Court. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976); *Warth v. Selden*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

### Class Action Status

■ The plaintiffs contend that Clara Taylor is a named plaintiff representing a class "of all others similarly situated." In that capacity, the plaintiffs assert, the mooting of Taylor's individual claim is not sufficient grounds for dismissal of the class action, especially when there are additional proper parties ready to step forward and assert claims based upon the same alleged violations as those initially raised by the named plaintiff. The plaintiffs contend that this position is consistent with well-established law in the Fourth Circuit of the Court of Appeals. *Cox v. Babcock and Wilcox Co.*, 471 F.2d 13 (4th Cir. 1972); *Moss v. Lane Co., Inc.*, 471 F.2d 853 (4th Cir. 1973); *Cypress v. Newport News General and Nonsectarian Hospital Association*, 375 F.2d 648 (4th Cir. 1967). Under the reasoning of these cases, the plaintiffs contend that Tay-

lor would still be capable of representing the interests of the class, even if additional named plaintiffs had not come forward to intervene. Since additional parties who allege that they have claims which are still unsatisfied and who allege that they are members of the same class as the plaintiff Taylor have moved to intervene and represent the class, the plaintiffs assert that there is an even more compelling argument here than in *Cox, Moss,* and *Cypress, supra,* to support a ruling that the entire action is not moot and should not be dismissed.

The defendants vigorously disagree, relying on the more recent cases of *Board of School Commissioners of Indianapolis v. Jacobs*, 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), and *Bradley v. Housing Authority of Kansas City*, 512 F.2d 626 (8th Cir. 1975). On their face, the facts in the *Jacobs* case appear to be quite similar to those in the present action. In that case, the named plaintiffs stated that the suit was brought as a class action and sought to have enjoined as being unconstitutional certain rules and regulations promulgated by the Indianapolis school board. The plaintiffs were students in the school system. They prevailed in the lower courts. At oral argument, the Supreme Court was informed that all of the named plaintiffs had graduated from the school system. In a per curiam opinion, the Supreme Court found that the case was moot as to the named plaintiffs and that no class action survived since the lower courts had not certified a class. It is clear from Mr. Justice Douglas' dissent, however, that what troubled the majority was that a judgment had been entered enjoining action by the school system as to the named plaintiffs but no judgment was entered as to any possible class and no class had been formally certified by the district court as required by Rule 23, Federal Rules of Civil Procedure, at the time that the judgment was entered.

The present case is, therefore, readily distinguishable from *Jacobs*. No decision on the merits has been reached by this Court and, while class action certification was deferred on February 26, 1976, the plaintiffs'

motion was denied at that time *without prejudice* to its renewal at a later stage in the proceedings. Further, the Court informally observed that the case appeared to be one that would qualify as a class action under Rule 23.

While the defendants gain additional support for their position from *Bradley v. Housing Authority of Kansas City, supra* ; however, it is clear that *Bradley* is not controlling here, especially in view of the numerous Fourth Circuit cases militating against the automatic dismissal of a class action which the class representative's claim becomes satisfied and moot. In *Bradley*, the Eighth Circuit Court of Appeals made clear that the dismissal of the class action was granted because of the specific practical problems which existed in the case (512 F.2d at 628). Moreover, *Bradley* is distinguishable because in that case the defendants had abandoned their rent-range policy shortly after the suit was filed (512 F.2d at 626). In the present case, the defendants' policies have continued, albeit in modified form, throughout the course of this litigation, and there is no indication that they have ceased to enforce them. Low income citizens are still, therefore, suffering the alleged harm of having received unfavorable placement on the housing authority's waiting list.

This case was initiated almost three years ago. It is not disputed that if it were dismissed now, members of the asserted class would be ready and able to come forward with a new suit against the defendants. With the disposal of the motions now before the Court, it appears that the case will be in proper form for a final pre-trial conference and for a determination of the definition of the class to be represented. Then it will be ready for trial. It would be unfair to the parties and a misuse of court time to terminate the present proceedings at this point and require that the process begin again on a new complaint.

### Petitioners for Intervention

Taking the claims of the petitioners for intervention as they are stated in their brief, it is apparent that together petitioners Wearing and Smith have alleged discrimination that, like the claims of plaintiff Taylor, occurred under both the pre-August, 1975, and the post-August, 1975, regulations and practices of the housing authority. Even when considering the additional factors asserted by the defendants in their brief opposing intervention by Wearing and Smith, there is no reason for the Court to find at this time that the petitioners should not be able to intervene, although in reaching a decision on the merits, it may be that petitioner Smith will have greater difficulty in prevailing.

Plaintiff Taylor claimed that she was found eligible for placement by the housing authority in early 1972 but was discriminated against because she was placed in a low rent range of approximately Thirty Dollars per month. Petitioner Wearing claims that she was found eligible for placement in September, 1975, and is being discriminated against because she was placed in a comparable status to that of Taylor. She would, however, be effected only by the post-August, 1975, regulations and procedures. Petitioner Smith claims that she was found eligible for placement in February, 1970, and is being discriminated against because she was placed in a rent range comparable to that of Taylor. While Smith would, therefore, have been effected by both sets of housing authority regulations, her claims are challenged by the defendants because of an apparent change in her status in April, 1976. The defendants assert that Smith amended her application in April, 1976, by deleting the other proposed member of the household (her grandson) and thereby became eligible for housing for the elderly to which the rent-range procedures do not apply. The defendants further assert that Smith was offered an apartment by the housing authority on June 7, 1976, which she turned down. None of these matters have been verified, nor have the petitioners had an opportunity to explain or answer any of the assertions of the defendants as to Smith's change in sta-

tus and refusal if they did, in fact, occur. The motions to intervene will, therefore, be granted, pursuant to the authority given the Court by Rules 23 and 24, Federal Rules of Civil Procedure.