Opinion
PHILLIPS, P. J.
Appellant was convicted in Berkeley of violating an ordinance prohibiting the operator of any vehicle from parking that vehicle upon any street in the City of Berkeley “for the principal purpose of demonstrating it or displaying it for sale, unless authorized by resolution of the Council.” From this conviction appellant appeals.
At trial, defendant, herein appellant, testified that he had advertised his automobile in a local newspaper prior to his placement of the “For Sale” sign in the window. He alleged that the newspaper advertisement was neither successful nor satisfactoiy, for besides the considerable expense it did not have the benefit of showing the condition and color to the public, *Supp. 3 nor did it permit a detailed listing of the accessories and facts pertinent to the automobile.
Moreover, appellant testified, he was bothered by numerous telephone calls asking the kinds of questions which a displayed vehicle would have answered by itself. Appellant asserted that he chose to save money and avoid excessive telephone calls, by taping a 9-inch by 12-inch “For Sale” sign on one window of his automobile and placing it in an unrestricted parking zone on a public steet. The vehicle obstructed no traffic he declared, and was legally parked in all ways except for the ordinance in question.
The issue before this court is whether this ordinance is an unconstitutional regulation of commercial speech. We hold that it is and reverse the judgment below.
Commercial speech has only recently been classified as a constitutionally protected First Amendment right. (Bigelow v. Virginia (1975) 421 U.S. 809 [44 L.Ed.2d 600, 95 S.Ct. 2222]; Va. Pharmacy Bd. v. Va. Consumer Council (1976) 425 U.S. 748 [48 L.Ed.2d 346, 96 S.Ct. 1817]; Linmark Associates, Inc. v. Willingboro (1977) 431 U.S. 85 [52 L.Ed.2d 155, 97 S.Ct. 1614].)
In Linmark the court dealt with a Willingboro, New Jersey ordinance which prohibited the posting of “For Sale” or “Sold” signs on real estate. The township justified the ordinance as an attempt to stem what was perceived as “white flight” from a racially integrated area. By prohibiting “For Sale” signs it was hoped that the racially mixed community would remain intact.
A unanimous Supreme Court held that the ordinance was violative of the First Amendment. Reasoning from earlier decisions which essentially eliminated the commercial speech exception to the First Amendment protection, the court ruled that even the important government interest of preserving a racially integrated neighborhood was not sufficient to overcome the strong policy behind the First Amendment’s protection of “the free flow of commercial information.” (Linmark, supra, 431 U.S. at p. 92 [52 L.Ed.2d at p. 161].)
Justice Marshall writing for the court rejected the township’s contention that the ordinance was merely a “time, place, and manner” regulation of free speech. The court found rather that the Willingboro *Supp. 4 ordinance regulated the content of speech. To the argument that ample alternative manners of communication existed Justice Marshall replied: “Although in theory sellers remain free to employ a number of different alternatives, in practice realty is not marketed through leaflets, sound tracks, demonstrations, or the like. The options to which sellers realistically are relegated—primarily newspaper advertising and listing with real estate agents—involve more cost and less autonomy than “For Sale” signs; are less likely to reach persons not deliberately seeking sales information; and may be less effective media for communicating the message that is conveyed by a “For Sale” sign in front of the house to be sold. The alternatives, then, are far from satisfactory.” (431 U.S. at p. 93 [52 L.Ed.2d at p. 162])(citations omitted).
The trial court in the case at bar ruled that the ordinance “regulates the ‘time, place, and manner’ of advertising vehicles for sale while being parked on the public streets of Berkeley.” The court also pointed out that an owner is not prohibited under the ordinance from advertising a vehicle on the public street so long as “the advertising was not the primary purpose for which the vehicle was parked there.”
Justice Marshall’s reasoning clearly applies to the analysis of the Berkeley ordinance. There are few realistic options for the seller of an automobile who is relegated almost exclusively to the newspaper as an alternative, there being no equivalent of a real estate listing for automobiles.
Moreover, the Berkeley ordinance, like the Willingboro ordinance, is not genuinely concerned with the place of the communication since Berkeley has not prohibited any other kinds of advertising on automobiles parked on public streets. Political statements, taxi-cab advertising, philosophical platitudes, bumper stickers, and religious commentary can all be found in abundance on vehicles in Berkeley. Thus, as in the Linmark case, the thrust of the regulation goes to the content of the communication not its form or location. (See Linmark, supra, 431 U.S. at p. 93 [52 L.Ed.2d at p. 162].) The place of the speech—vehicles on public streets, or the manner of the speech—for sale signs—are not the object of the legislation, since other messages are permitted on vehicles on the streets via the medium of signs.
Once the Supreme Court determines as in Linmark, that speech content is being regulated by a challenged ordinance, a three-step test is applied to check its constitutionality. First, the court assesses the importance of the governmental objective. If the objective of the *Supp. 5 ordinance or statute is not considered “important,” as that term is used by the court, then the inquiry need go no further. (Linmark, supra, 431 U.S. at pp. 94-95 [52 L.Ed.2d at p. 163].)
Second, if the governmental objective is important, the court looks to see if it is “necessary” to use that particular method to achieve the objective. (Id.) For example, in Va. Pharmacy Bd v. Va. Consumer Council, the court was unpersuaded that a prohibition on prescription drug price advertising was necessary to further the health and safety of state residents even though the state had a “strong interest” in the maintaining of “professionalism on the part of licensed pharmacists.” (425 U.S. at p. 766 [48 L.Ed.2d at p. 361].)
Third, if the method is found to be necessary to achieve the important governmental objective, the court engages a balancing test weighing the governmental objective against the First Amendment restraints. (Linmark, supra, 431 U.S. 85.)
Applying the Linmark test to the case at bench requires this court to first ascertain the governmental objective (and significance thereof). The lower court ruled that the City of Berkeley had two interests in prohibiting the advertising of automobiles on public streets. First, there is the aesthetic interest in “prohibiting the use of such streets for used-car-for-sale lots.” Second is the interest in “reserving the streets for their primary purpose of facilitating traffic movement and limited parking.” We agree with the lower court that aesthetics and traffic management are significant municipal interests.
Applying step two of the Linmark test, we must next ascertain whether the Berkeley ordinance is necessary to an achievement of those interests.[1]
We hold that the ordinance is not necessary to any aesthetic interests which Berkeley may wish to protect. Barring all vehicles upon which there are “For Sale” signs is a meatcleaver approach where a scalpel is required. Certainly a vehicle which is festooned with large multi-colored flags and garishly painted signs may be an aesthetic blight, but Berkeley could achieve its interest by restricting the size, quantity, and nature of the communication media without prohibiting all attempts to communicate the message. The Berkeley ordinance, then, is not necessary to an achievement of the goal of aesthetically pleasing streets and must thus be *Supp. 6 considered over-broad in banning even those “For Sale” signs which are in no way a threat to municipal charm.
Nor is the ordinance necessaiy to achieve the traffic management interest suggested. Berkeley traffic/parking interests can be achieved by enforcing the present laws or legislating new ones if the present laws are not adequate.
Finally, had we determined that the Berkeley ordinance is necessary for the protection of the city’s admittedly valid interests, then the last step of the Supreme Court’s test remains, the balancing of interests. In the case at bar this is the balancing of the appellant’s First Amendment right to communicate his information to potential buyers against the interests the city has in aesthetics and traffic management.
No reasonable person could argue that Berkeley’s interests of aesthetics and traffic management are as significant as racial integration in the hierarchy of municipal interests. (See Traficante v. Metropolitan Life Ins. (1972) 409 U.S. 205 [34 L.Ed.2d 415, 93 S.Ct. 364].) Yet even the Willingboro ordinance which did involve integrated housing was not sufficiently important to overcome the First Amendment considerations.
We are not holding today that an ordinance regulating the sale of vehicles on city streets is per se unconstitutional. Indeed under either manner of speech regulation discussed herein, “content” regulation or “time, place, and manner” regulation, numerous constitutional ordinances exist or may be drawn. The only question before us is the constitutionality of this ordinance. For the reasons set forth above, we hold that the ordinance does impair “the flow of truthful and legitimate commercial information” and applying the United States Supreme Court test does not reach the threshold of constitutionality.
Reversed.
Sutton, J., and Bancroft, J., concurred.

The Linmark decision makes it clear that the burden of showing this necessity is on the party seeking to censor commercial speech. (431 U.S. at pp. 94-95 [52 L.Ed.2d at p. 163].)