**D'Ann LAUDON, Plaintiff,**

v.

**Fred LOOS, Defendant.**

**Civ. No. 87–71699.**

United States District Court, E.D. Michigan, S.D.

April 22, 1988.

---

Gregory Jackson, Southfield, Mich., for plaintiff.

Earl E. Ward, Hamtramck, Mich., for defendant.

## MEMORANDUM AND ORDER

COHN, District Judge.

### I.

This is a housing discrimination case, 42 U.S.C. § 1982, which was tried to the Court on April 7, 1988. The proofs show that plaintiff, D'Ann Laudon (Laudon), answered a classified advertisement for an apartment placed in the Macomb Daily newspaper by defendant, Fred Loos (Loos), on December 14, 1986. Following up on a personal conversation with Loos's wife during which Laudon submitted a $50 deposit, she met with Loos on December 16, 1986 to complete the rental arrangement. After reaching an agreement on the rental, Laudon, a caucasian, asked Loos if he was prejudiced and told him that her stepfather and some of her friends were black. Loos responded by telling Laudon that she could not have blacks visit the apartment since he would have trouble with the neighbors. He told Laudon that she could move in, but could have no black visitors. Deeming this condition on the apartment unacceptable, Laudon declined to rent it.

While Loos denies he exhibited a discriminatory animus towards blacks in his conversation with Laudon, the denial was not credible. At a deposition, Loos said to Laudon: "You'll be sorry; you better watch out."

A tester from the Fair Housing Center testified to an effort to rent the apartment from Loos.[1] In a telephone conversation, Loos asked the tester if she was white and said he would not rent to blacks because of a concern about vandalism. He also told the tester that people in his community do not rent to blacks and that if she referred a friend to him in the event she did not want the apartment, she should be sure the referral was not black.

The reports of two additional testers, admitted as business records of the Fair Housing Center, FRE 803(6),[2] display a discriminatory animus by Loos towards blacks in his conversation with them. When asked on the witness stand, "Did you ask Celine Belanger [a tester] what her race was?", Loos responded:

A. I may have.

Q. Is that a normal practice of yours?

A. I don't know. It depends upon the circumstances, whatever's there. It's a—it doesn't make a difference.

Q. If it doesn't make a difference, why then did you ask?

A. Well' [sic] I think sometimes understanding a person's needs is greatly desired. Somebody else may have a lot more needs than the other person. However, I try to put a good portion—a person's balance into a subjective analysis of do they really need the place or possibly is it right for them, as well as right for me to offer it to them because sometimes people have different opinions of what they want or what there's [sic]

---

1. In *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 373, 102 S.Ct. 1114, 1121, 71 L.Ed.2d 214 (1982), the Supreme Court defined "testers" as individuals who, without an intent to rent or purchase a home or apartment, pose as renters or purchasers for the purpose of collecting evidence of unlawful steering practices, i.e., directing prospective buyers or lessees to different areas of the community according to their race.

The evidence resulting from the experience of testers is admissible to show discriminatory conduct on defendant's part. *Zuch v. Hussey,* 394 F.Supp. 1028, 1051 (E.D.Mich.1975) (and cases cited therein); *Johnson v. Jerry Pals Real Estate,* 485 F.2d 528 (7th Cir.1973) (tester evidence often may be the only available means to prove the unlawful conduct). Indeed, in *Traffi-cante v. Metropolitan Life Ins. Co.,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972), and *Havens Realty, supra,* testers were held to have standing to sue in their own right under sections 810(a) and 804(d) of the Fair Housing Act of 1968, 42 U.S.C. §§ 3610(a), 3604(d).

2. *See United States v. Hathaway,* 798 F.2d 902, 905–06 (6th Cir.1986) (when proper foundation has been laid). Loos's statements contained in the reports are admissions by a party-opponent, FRE 801(d)(2). *See Estate of Shafer v. Comm'r of Internal Revenue,* 749 F.2d 1216, 1219 (6th Cir.1984).

looking for as a—and I have a lot of telephone calls from many blacks that are on the complete wrong end of it, and they think that I have three bedrooms and whatever, or they can't afford it and a lot of things like that. It's something that I try to put forth straight like cost of money or whatever it is that we can both identify and be a mutual line. If it's something that they's—they would like to be known I have nothing to hide.

Laudon testified as to her humiliation and embarrassment regarding the incident and that she was so distraught over Loos' attitude she did not work the following day. Loos did not return the $50 deposit.

## II.

42 U.S.C. § 1982 reads:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property.

 The statute's stricture is independent of Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601, *et seq.*, and confers a cause of action on a person discriminated against in the sale or rental of private housing, *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968), including incidents of denial of housing to whites because of their association with blacks. *Woods–Drake v. Lundy*, 667 F.2d 1198, 1201 (5th Cir.1982); *Bills v. Hodges*, 628 F.2d 844 (4th Cir.1980); *United States v. Wood*, 780 F.2d 955, 961 n. 17 (11th Cir.1986); *Walker v. Pointer*, 304 F.Supp. 56 (N.D.Texas 1969) (seminal case); *Lamb v. Sallee*, 417 F.Supp. 282, 284 (E.D. Ky.1976). *See generally, Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969) (whites have standing to sue under § 1982); *Memphis v. Greene*, 451 U.S. 100, 101 S.Ct. 1584, 67 L.Ed.2d 769 (1981) (§ 1982 encompasses every racially motivated refusal to rent or sell.)

## III.

Loos clearly discriminated against Laudon by effectively denying the apartment to her because her stepfather was black and she intended to entertain black friends. *See Woods–Drake*, 667 F.2d at 1201. Laudon suffered damages as a consequence of the discrimination in the form of embarrassment and humiliation, for which she is entitled to compensation. *Id.* at 1203; *Jordan v. Dellway Villa*, 661 F.2d 588, 594 (6th Cir.1981); *Shaw v. Cassar*, 558 F.Supp. 303, 315 (E.D.Mich.1983). She is also entitled to a return of the $50 deposit.

The amount of Laudon's damages lies in the sound discretion of the Court and is essentially intuitive. The Court finds Laudon's damages to be $1,550. Loos is a person of modest means and the damages awarded should not be so large as to oppress him, since he must also pay Laudon's attorney's fees. 42 U.S.C. § 1988.

The deputy clerk will enter judgment in favor of Laudon in the amount of $1,550. As to attorney's fees, counsel are directed to Local Rule 17(n).

SO ORDERED.