AD HOC COMMITTEE OF CONCERNED TEACHERS on behalf of MINOR AND UNDER–AGE STUDENTS ATTENDING GREENBURGH ELEVEN UNION FREE SCHOOL DISTRICT and on its own behalf, Plaintiff,

v.

GREENBURGH #11 UNION FREE SCHOOL DISTRICT and Board of Education, Greenburgh #11 Union Free School District, Defendants.

No. 88 Civ. 0976 (RWS).

United States District Court, S.D. New York.

July 7, 1988.

Sussman & Sussman, Yonkers, N.Y. for plaintiff; (Michael H. Sussman, of counsel).

Plunkett & Jaffe, P.C., White Plains, N.Y., for defendants; (Ronald A. Longo, of counsel).

## OPINION

SWEET, District Judge.

Defendants Greenburgh # 11 Union Free School District and the Board of Education, Greenburgh # 11 Union Free School District (collectively, the "District") have moved under Rule 12(b)(6), Fed.R.Civ.P. to dismiss the complaint of plaintiff, Ad Hoc Committee of Concerned Teachers on behalf of minor and under-age students attending Greenburgh Eleven Union Free School District (the "Committee") for lack of standing. Upon the following conclusions, the motion is granted, and the complaint will be dismissed with leave granted to replead or resubmit within twenty (20) days of the entry of this order.

*Prior Proceedings*

The Committee filed its complaint on February 26, 1988 and the District moved for the dismissal on March 25. The motion was fully submitted on April 22, 1988.

The District has submitted an affidavit setting forth certain facts which have not been challenged by the Committee. However, since these facts are outside the pleadings, the District's motion will be treated as one for summary judgment and because of such treatment the Committee will be granted twenty (20) days from the date of this order to supplement the record or to challenge the District's facts as here set forth.

*The Complaint*

In its complaint, the Committee alleges that it has been formed by about twenty teachers to insure the provision of a non-discriminatory educational environment for the minor children enrolled in this special school district and to assure that its own members were able to enjoy the benefits of inter-racial association which derive from a racially-mixed teaching and administrative staff. The complaint sets forth both the activities undertaken by the Committee during the last two years toward these purposes and the District's continued practice of employing non-minority staff in administrative and teaching positions.

*The Facts*

The District is a public school district established by special act of the State Legislature for the main purpose of educating students housed at a private social service agency known as The Children's Village. The Children's Village employs some 80

teachers, 65 paraprofessional staff and 9 administrators to teach approximately 320 emotionally disturbed boys (the "Children"), the majority of whom reside at The Children's Village, although a small number live with their parents or guardians and are transported daily to the School District.

Most of the Children who attend the District reside in The Children's Village as a placement by the Office of Special Services for Children of the Human Resources Administration of New York City. In the case of Children who have been freed for adoption, both custody and guardianship are held jointly by the Office of Special Services for Children and The Children's Village. Children who have not been freed for adoption are in the joint custody of the Offices of Special Services for Children and The Children's Village, but guardianship is retained by their natural parents. Three-quarters of the Children placed at The Children's Village go back to reside with their parents after an average stay of two years.

*The Committee is Without Authority to Represent the Children*

█ Rule 17(c), Fed.R.Civ.P., provides that a representative, such as a general guardian, committee, conservator or other like fiduciary may sue on behalf of an infant. An infant who does not have a duly appointed representative may sue by his or her next friend or by a guardian *ad litem.* The complaint does not allege such authority to represent the minors and under-age students who it claims to represent.

In *Estate of Masselli by Masselli v. Silverman,* 606 F.Supp. 341, 343 (S.D.N.Y. 1985), the court held that because the decedent's father was not a legally appointed representative he had no standing to bring a Section 1983 claim against the defendants for the murder of his son. Similarly, in *Howard v. Koch,* 575 F.Supp. 1299 (E.D.N.Y.1982), plaintiff was held to have no standing to recover for alleged civil rights violations stemming from police conduct toward his girlfriend and/or her children, and in *Barrett v. United States,* 622 F.Supp. 574, 591 (S.D.N.Y.1985), *aff'd,* 798 F.2d 565 (1986), the daughter of decedent

could not maintain a civil rights action in her individual capacity for decedent father's personal injuries.

Apart from the failure of the Committee to allege any authority to represent the Children, the Supreme Court has made clear that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge v. Americans United,* 454 U.S. 464, 474, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982) (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).

The Committee has cited no authority to establish any representational right on behalf of the Children. In view of the position of The Children's Village, the Office of Special Services for Children and the parents of the Children, to grant such a right to the Committee is unwarranted.

*The Committee Fails to Meet the Test of Standing*

█ The Committee seeks to invoke jurisdiction pursuant to 28 U.S.C. § 1331, alleging that its complaint states a cause arising under the equal protection clause of the Fourteenth Amendment to the United States Constitution. No injury to the members of the Committee or statutory violation is set forth. A review of the authorities establishes that under these circumstances the Committee lacks standing.

In *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court held that standing to sue had constitutional limitations and that a plaintiff had to establish that it had a personal stake in the outcome of the controversy so as to warrant his invocation of federal court jurisdiction and to show "demonstrable, particularized injury."

The Second Circuit on a rehearing *en banc* in *Evans v. Lynn,* 537 F.2d 571 (2d Cir.1975), held that minority residents of an inner-city area did not have standing to challenge the allocation of funds by federal agencies for sewers and recreational developments. The Court cited extensively from Supreme Court precedent, stating:

Mere interest in, or concern over, a prospective defendant's acts—no matter how deeply felt—is insufficient to demonstrate injury in fact. What must be shown is a "specific and perceptible harm"—a "concrete injury" actually suffered by the particular plaintiff, or else clearly imminent, which is capable of resolution and redress in the federal courts.

*Id.* at 591.

The Committee has relied on *Trafficante v. Metropolitan Life Insurance Company,* 409 U.S. 205, 210, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972), where the Court held that standing to sue may derive from the deprivation of the benefits of inter-racial association asserting that non-economic injury is sufficient to predicate standing where, for example, plaintiffs allege that due to defendant's conduct, a neighborhood is precluded from gaining an inter-racial character. *See also, Sierra Club v. Morton,* 405 U.S. 727, 734–35, 92 S.Ct. 1361, 1365–66, 31 L.Ed.2d 636 (1972).

The Committee also has cited *Waters v. Heublin,* 547 F.2d 466 (9th Cir.1976), where the plaintiff, a white woman, charged that her employer discriminated against blacks and Hispanics and was found to be a person aggrieved under Title VII, 42 U.S.C. §§ 2000e–5(b), (f)(1). Similarly, the Committee has noted *EEOC v. Bailey Co., Inc.,* 563 F.2d 439, 452–55 (6th Cir.1977) and *Nodelman v. Aero Mexico,* 528 F.Supp. 475, 484–85 (9th Cir.1980), as well as *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1983), where HOME, an organization created to fight discrimination in Richmond's housing market, was held to have standing to assert that defendants' alleged practice of racial steering impinged upon its organizational purposes and the rights of its members.

However, each claim of the plaintiffs in the cases cited by the Committee alleged a violation of a congressionally enacted statutory right. In both *Trafficante v. Metropolitan Life Insurance Company,* 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) and *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979), § 810 of the Fair Housing Act, defining a "person aggrieved," was broadly construed to provide standing beyond those who are the direct victims of the conduct prescribed in the Act in order to give full meaning to the congressional intent. As was noted in Justice White's concurring opinion in *Trafficante,* (joined by Justices Blackman and Powell):

> Absent the Civil Rights Act of 1968 I would have great difficulty in concluding that Petitioners' complaint in this case presented a case in controversy within the jurisdiction of the District Court under Article III of the Constitution.

409 U.S. at 212, 93 S.Ct. at 368.

In *Gladstone,* the Court noted that "Congress may, by legislation, expand standing to the full extent permitted by Article III, thus permitting litigation by one 'who otherwise would be barred by prudential standing rules.'[1] *Warth v. Seldin,* 422 U.S. at 501 [95 S.Ct. at 2206]." *See also Sierra Club v. Morton,* 405 U.S. 727, 732, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972) wherein the Supreme Court pointed out that:

> Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a "personal stake in the outcome of the controversy," *Baker v. Carr,* 369 U.S. 186, 204 [82 S.Ct. 691, 703, 7 L.Ed.2d 663] as to ensure that "the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capa-

1. Prudential limits mentioned in *Warth* are as follows:

First, the Court has held that when the asserted harm is a "generalized grievance" should insubstantially equal measure by al or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.... Second, even when the plaintiff has alleged

injury sufficient to meet the "case or controversy" requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.

422 U.S. at 499, 95 S.Ct. at 2205.

**918**

ble of judicial resolution." *Flast v. Cohen,* 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947.

*Waters* and *EEOC v. Bailey Co., Inc.,* cited by the Committee, both dealt with a plaintiff alleging to be "a person aggrieved" under the relevant statute.

 While the Fourteenth Amendment prevents discrimination in the selection of faculty, *Reynolds v. Abbeville County School District,* 554 F.2d 638, (4th Cir. 1977), it does not provide standing for those who do not allege discrimination as to themselves. The prudential considerations considered in *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), are significant in determining whether third parties should be granted standing. It has been held that third party standing is appropriate only when the third party's rights protect that party's relationship with the litigant. *See Haitian Refugee Center v. Gracey,* 809 F.2d 794, 809 (D.C.Cir.1987). Such standing should not be permitted when the injury has been suffered by other, unidentified members of a class. *See Doe v. Blum,* 729 F.2d 186, 190 n. 4 (2d Cir.1984).

Here the complaint does not allege that any member of the Committee has been discriminated against and fails to cite any statutory violation. Prudential considerations and the lack of injury to the Committee compel the conclusion that the Committee lacks standing.

The complaint will be dismissed with costs with leave granted to replead within twenty (20) days or to make a further factual submission.

IT IS SO ORDERED.