873 F.2d 25
 49 Fair Empl.Prac.Cas. 1081,
50 Empl. Prac. Dec. P 39,022, 57 USLW 2691,
13 Fed.R.Serv.3d 482, 53 Ed. Law Rep. 415
 AD HOC COMMITTEE OF CONCERNED TEACHERS, on Behalf of MINOR
AND UNDER-AGE STUDENTS ATTENDING GREENBURGH ELEVEN
UNION FREE SCHOOL DISTRICT and on its
Own Behalf, Petitioners-Appellants,
v.
GREENBURGH # 11 UNION FREE SCHOOL DISTRICT and Board of
Education, Greenburgh # 11 Union Free School
District, Respondents-Appellees.
 No. 923 Docket 88-7697.
 United States Court of Appeals,
Second Circuit.
 Argued March 28, 1989.
Decided April 17, 1989.
 
 1
 Michael H. Sussman, (Sussman & Sussman, Yonkers, N.Y., of counsel), for petitioners-appellants.
 
 
 2
 Phyllis S. Jaffe (Plunkett & Jaffe, White Plains, N.Y., of counsel), for respondents-appellees.
 
 
 3
 Before FEINBERG and PIERCE, Circuit Judges, and MOTLEY, District Judge.*
 
 MOTLEY, Senior District Judge:
 
 4
 The Ad Hoc Committee of Concerned Teachers (the "Committee"), on behalf of minor and under-age school-children attending Greenburgh Eleven Union Free School District (the "Children") and on its own behalf, appeals from an order of the United States District Court 687 F.Supp. 914, for the Southern District of New York, Sweet, J., dismissing its complaint against Greenburgh Eleven Union Free School District and its Board of Education (collectively, the "District") pursuant to Fed.R.Civ.P. 12(b)(6) for lack of standing and for lack of capacity to represent the Children.
 
 
 5
 We agree with the district court that the Committee lacks standing to assert either its own interests or the interests of its members in that neither the Committee nor any of its members has alleged any judicially cognizable injury. However, in its claimed capacity to sue as the Children's "next friend," we find that the District Court should have allowed the Committee to bring suit to vindicate the Children's constitutional right to a school environment free from the effects of racially discriminatory practices alleged in the District's hiring of school faculty and administrative staff. Accordingly, we reverse that portion of the District Court's decision holding that the Committee is without capacity to represent the Children's interests and remand the case for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 6
 The Greenburgh Eleven School District is a public school district established by a special act of the New York State Legislature for the main purpose of educating students housed at a private social service agency located in Dobbs Ferry, New York, and known as Children's Village. Children's Village employs some 80 teachers, 65 paraprofessional staff and 9 administrators to teach approximately 320 emotionally disturbed boys. The vast majority of the Children are either Black or Hispanic and reside at Children's Village. A small number live with their parents or guardians and are transported daily to the District.
 
 
 7
 Most of the children residing at Children's Village are placed there by the Office of Special Services for Children ("OSS") which is a part of New York City's Human Resources Administration. In the case of children who have been freed for adoption, both custody and guardianship are held jointly by OSS and Children's Village. Children who have not been freed for adoption are in the joint custody of OSS and Children's Village while guardianship is retained by their natural parents. Three-quarters of the children placed at Children's Village go back to reside with their parents after an average stay of two years.
 
 
 8
 Each member of the Greenburgh Eleven School Board also serves on the Board of Directors of Children's Village. The School Board is the governing body of the District and is directly responsible for the District's hiring decisions with respect to teaching faculty and administrative staff.
 
 The Complaint
 
 9
 In a complaint filed February 26, 1988, the Committee alleges that it is a group of about twenty Black and White teachers currently employed by the District and aggrieved by alleged racial discrimination in the District's employment practices. The complaint states that the Committee was formed to ensure the provision of a nondiscriminatory educational environment for the minor children enrolled in this special school district and to assure that its own members are able to enjoy the benefits of interracial association deriving from a racially mixed teaching faculty and administrative staff. Since the students "reside separate and apart from their own families, the Committee asserts that it alone is in a position to represent [the Children's] right to and interest in a discrimination free environment of public education." Plaintiff's Complaint at p 2.
 
 
 10
 Specifically, the complaint alleges that the District has "intentionally failed to hire qualified Black and Hispanic professionals out of racial animus and discriminatory intent." Plaintiff's Complaint at p 25. It goes on to state that by and through the District's racially discriminatory hiring practices in violation of the Fourteenth Amendment's Equal Protection Clause, "[t]he students enrolled at Greenburgh 11 are being intentionally and discriminatorily denied equal educational opportunity and a learning environment free of racial discrimination and prejudice ..." Plaintiff's Complaint at p 28. Those same hiring practices, alleges the complaint, also violate the Equal Protection rights of Committee members in that they are deprived of the benefits of interracial association which, absent such discriminatory hiring, would be available to them. The complaint seeks two forms of injunctive relief: one barring the District from continued discriminatory hiring practices and the other requiring it to adopt an affirmative action program to remedy the effects of the alleged past discrimination.
 
 
 11
 Since each member of the Committee is already employed by the District, the Committee's complaint and the complaint of each of its members is essentially that the District failed to hire minority teachers and administrative staff who would have created a racially integrated work environment. Reviewing the complaint in this light, the District Court held that the Committee lacked standing to represent itself and the interests of its own members as neither the Committee nor any of its members had alleged any specific discrimination causing direct and particularized injury. In the absence of any judicially cognizable injury or a statute specifically giving the Committee or its members standing to sue, the District Court found that neither the Committee nor any of its members had a justiciable case or controversy so as to confer standing to maintain a claim.
 
 
 12
 As to the Children, the District Court found that the Committee was without authority to represent the Children's interests as a duly appointed representative and should not be given status as "next friend" or guardian ad litem pursuant to Fed.R.Civ.P. 17(c). Having determined that the Committee could not maintain suit either on its own behalf or on behalf of the Children, the District Court dismissed the complaint with leave to replead. Appellant takes its appeal from the District Court's dismissal of its complaint.
 
 DISCUSSION
 Standing
 
 13
 We agree with the District Court that the Committee, on its own behalf, has failed to allege a judicially cognizable injury under the Equal Protection Clause of the Fourteenth Amendment. The gravamen of the injury alleged as to the Committee is that the District's discriminatory hiring practices deprived Committee members of the benefits of interracial association that would be derived from an integrated school faculty and administrative staff. While such an injury has been held sufficient to permit standing in light of a congressionally enacted statute such as the Fair Housing Act, see Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (White, J., concurring); Gladstone Realtors v. Bellwood, 441 U.S. 91, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979) (Rehnquist, J., dissenting), deprivation of the benefits of interracial association has not been recognized, in and of itself, as an injury sufficiently "direct and personal to satisfy the case or controversy requirement of Article III." Warth v. Seldin, 422 U.S. 490, 514, 95 S.Ct. 2197, 2213, 45 L.Ed.2d 343 (1975).
 
 
 14
 Moreover, "[e]ven if we assume, arguendo, that apart from any statutorily created right the asserted harm to [the Committee's] members is sufficiently direct and personal to satisfy the case-or-controversy requirement of Art. III, prudential considerations strongly counsel against according [the Committee] standing to prosecute this action." Id. On its own behalf, the Committee does not allege that any of its members have been discriminated against but rather that "they have been harmed indirectly by the exclusion of others." Id. Since the Committee's alleged injury is legitimately characterized "as an attempt to raise the putative rights of third parties," prudential considerations dictate that the Committee should not be permitted to invoke the judicial process on its own behalf. Id. Accordingly, the District Court correctly concluded that the Committee lacks standing to litigate the injury to its own members as alleged in the complaint.
 
 
 15
 On the Children's behalf, however, the complaint alleges a direct, specific deprivation of the Children's Fourteenth Amendment right to a school environment free from the effects of racially discriminatory practices. It is well settled that students have standing under the Fourteenth Amendment to challenge faculty segregation because it denies them equality of educational opportunity. Rogers v. Paul, 382 U.S. 198, 86 S.Ct. 358, 15 L.Ed.2d 265 (1965); Bradley v. School Board of Richmond, 382 U.S. 103, 86 S.Ct. 224, 15 L.Ed.2d 187 (1965) (per curiam ); see generally 3 A.L.R.Fed. 325, Sec. 3(b) (1970). Since the complaint states that the Children suffered manifest injury to a right clearly grounded in the Constitution, it correctly alleges a "specific and perceptible harm ... which is capable of resolution and redress in the federal courts." Evans v. Lynn, 537 F.2d 571, 591 (2d Cir.1976) (en banc ), cert. denied, 429 U.S. 1066, 97 S.Ct. 797, 50 L.Ed.2d 784 (1977). As the Tenth Circuit recognized in a similar suit brought by Mexican-American students to challenge discriminatory hiring practices in their own school district: "[t]hough a would-be teacher ... might be the most logical person to challenge the [D]istrict's hiring practices ..., such a person is not the only one who has a sufficient interest to institute such an action." Otero v. Mesa County Valley School Dist., 568 F.2d 1312, 1314 (10th Cir.1977).
 
 
 16
 As to any prudential limitations on the Children's standing to sue, we note that the injury claimed is not an abstract concern or "generalized grievance" which the Children share with other members of society. See Warth, 422 U.S. at 499, 95 S.Ct. at 2205. The Children are asserting their own right to a learning environment free of racial discrimination and should be entitled to show, if they can, that such discrimination exists in the District's hiring of teachers and administrators. Since no prudential limitations counsel against access to a judicial forum, and since the Children claim direct and specific injury to a right grounded in the Equal Protection Clause of the Fourteenth Amendment, we can find no reason to deny them their day in federal court. Accordingly, we find that the District Court erred in dismissing those portions of the complaint alleging injury to the Children's constitutional rights and that this part of the lawsuit should be allowed to proceed.
 
 
 17
 The Committee as "Next Friend"
 
 
 18
 Protecting the rights of the minor children unable to sue for themselves presents a different question from the issue of standing; that is, whether "next friend" status as authorized by Fed.R.Civ.P. 17(c) should have been conferred on the Committee and its members by the District Court. The District Court recognized that the Children's constitutional right to an educational environment free from state-sanctioned racial discrimination in faculty and administrative appointments was at stake in this action. Nonetheless, it refused to allow the Children's teachers to act as "next friend" in bringing this suit.
 
 
 19
 The Committee claims capacity to represent the Children as their "next friend" pursuant to Fed.R.Civ.P. 17(c) ("Rule 17(c)"). The District Court found that the Committee failed to establish any right to represent the Children under that rule. The court held that "[i]n view of the position of The Children's Village, the Office of Special Services for Children and the parents of the Children, to grant such a right to the Committee is unwarranted." Because we believe that the Committee and the teachers it represents is in a unique position to vindicate the Children's constitutional rights, we disagree with the conclusion of the District Court and hold that the Committee should be allowed to represent the Children's interests as "next friend" pursuant to Rule 17(c).
 
 In pertinent part, Rule 17(c) states:
 
 20
 Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem.
 
 
 21
 Rule 17(c) has always been viewed as permissive and not mandatory. It gives a federal court power to authorize someone other than a lawful representative to sue on behalf of an infant or incompetent person where that representative is unable, unwilling or refuses to act or has interests which conflict with those of the infant or incompetent. 6 C. Wright & A. Miller, Federal Practice and Procedure: Civil Sec. 1570; 3A J. Moore & J. Lucas, Moore's Federal Practice, p 17.26 (2d Ed.1987). As Professor Moore puts it:
 
 
 22
 Under the second sentence of subdivision (c) an infant or incompetent person who does not have a duly appointed representative may sue by his next friend or by a guardian ad litem. Even though the infant or incompetent has a general representative, if the representative is unable or refuses to act or his interests conflict with the person represented, the infant or incompetent may sue in federal court by his next friend or by a guardian ad litem. Courts have always had the power to appoint special representatives under such circumstances, and this power should be considered retained by the federal court in Rule 17(c).
 
 
 23
 Id. at 17-212-213 (citations omitted).
 
 
 24
 Federal courts in the Southern District of New York and other circuits have repeatedly affirmed a court's power to determine that the interests of a child or incompetent will be best represented by a "next friend" or guardian ad litem and not by an authorized representative such as a parent or general guardian. See generally Martha Von Bulow by her next friends Alexander Auersperg and Annie Laurie Auersperg et al. v. Claus Von Bulow, 634 F.Supp. 1284, 1292-93 (S.D.N.Y.1986) (Walker, J.). In Seide v. Prevost, 536 F.Supp. 1121, 1132-33 (S.D.N.Y.1982) (Sweet, J.), and Child v. Beame, 412 F.Supp. 593, 599 (S.D.N.Y.1976) (Weinfeld, J.), the District Courts allowed the "next friends" of institutionalized children to maintain suit where parents were unable or refused to act or had abandoned interest. In Hoffert v. General Motors Corp., 656 F.2d 161, 164 (5th Cir.1981), cert. denied, 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982), a conflict of interest between a minor and his general representative justified the appointment of a guardian ad litem. Accord Developmental Disabilities Advocacy Center, Inc. v. Melton, 689 F.2d 281, 285 (1st Cir.1982); see also Adelman on behalf of Adelman v. Graves, 747 F.2d 986 (5th Cir.1984) (even when party is already represented, court has power to appoint guardian ad litem when interests of general representative are in conflict with those of person represented); Noe v. True, 507 F.2d 9 (6th Cir.1974) (trial court should have considered and ruled on motion by attorney for 14-year-old that he be appointed her guardian ad litem in suit challenging state abortion law where her legal guardian was a defendant).
 
 
 25
 The Committee admits that it has not been appointed to represent the Children in this lawsuit. This much being conceded, there are good reasons to allow the Committee to represent the Children as "next friend." First, the Committee represents teachers who are intimately involved with the Children's education and possess a first-hand knowledge of the Children's educational needs. Secondly, those teachers appear to have instituted this suit in good faith and out of genuine concern for the Children's development. Lastly, the Committee is the only group of adults likely to seek vindication of the Children's constitutional rights to a learning environment free of any racially discriminatory practices.
 
 
 26
 Since each member of the Greenburgh # 11 School Board also serves on the Board of Directors of Children's Village, it is difficult to believe that those adults who have custody of the Children will bring suit against the District. Similarly, it is unrealistic to expect that New York City's Human Resources Administration would express any great enthusiasm for suing the District. Finally, since the Children are no longer in the care and custody of their natural parents, those adults have little involvement with the daily aspects of the Children's schooling and are not likely to prosecute this type of action. Considering the respective positions of those adults who maintain some legal relationship with the Children, we deem it proper to grant the Committee "next friend" status and allow it to proceed with this action on the Children's behalf.
 
 
 27
 Even though this Circuit has never ruled on the question explicitly, we follow the general rule that when an infant's authorized representative is unable, unwilling or refuses to act, or has interests which conflict with that of the infant, a court may appoint a "next friend" to ensure that the infant's rights are protected in a court of law. To this we add that a court should consider the good faith of those claiming to speak for the infant and satisfy itself that the "next friend" is motivated by a sincere desire to seek justice on the infant's behalf. In addition, a court should explore the ability of the "next friend"--financial or otherwise--to prosecute the type of action at hand. We would not sanction any attempt to assert the legitimate rights of children as a mere pretext for advancing ulterior political or economic aims. Nor would we approve of persons who, despite their good intentions, find themselves unable to finish what they start. Since the facts and circumstances of each case will vary, a court should conduct an inquiry into the application of any adult or group of adults seeking to represent a child's interests as "next friend."
 
 
 28
 Reviewing the facts of this case, we believe the District Court erred in not allowing the Committee to prosecute this action as the Children's "next friend." The opinion of the District Court correctly notes that the Committee claims no right to speak for the Children either as a legal guardian or other authorized representative. It fails to consider, however, factors which suggest that the Committee is the one group of adults likely to ensure that the Children do not suffer the effects of racially discriminatory practices in the hiring of their school's faculty and administrative staff. Moreover, there is nothing to suggest that the Committee is not acting in good faith or not ready, willing and able to prosecute this action. As Judge Weinfeld put it in Child:
 
 
 29
 The term ["next friend"] is broad enough to include any one who has an interest in the welfare of an infant who may have a grievance or a cause of action ... The right of access to courts by those who feel they are aggrieved should not be curtailed; and this is particularly so in the instance of children who, rightly or wrongly, attribute such grievances to their very custodians. Those who propose to speak for the plaintiffs have manifested an interest in their welfare and should, under the circumstances here presented, be allowed to proceed.
 
 
 30
 Child, 412 F.Supp. at 599.
 
 
 31
 Accordingly, that part of the District Court's decision which denies "next friend" status to the Committee is reversed. On behalf of the Children, and to redress the alleged injuries to the Children's constitutional rights to a school environment free of racially discriminatory practices, the Committee may prosecute this action as the Children's "next friend" pursuant to Fed.R.Civ.P. 17(c). As to the injuries alleged by the Committee on its own behalf, the District Court correctly dismissed that portion of the Committee's complaint for lack of standing. The judgment of the District Court is therefore affirmed in part and reversed in part and the cause is remanded for further proceedings consistent with this opinion.
 
 
 
 *
 Honorable Constance Baker Motley, Senior United States District Judge, Southern District of New York, sitting by designation