356 F.3d 235
 Tina M. PALMER, Bobby L. Davis, Jesse Cooper, Jr., John W. Leverette, Anthony J. Moore, Jim Albert Rodgers and Roderick K. Crockett, Plaintiffs-Appellants,
v.
OCCIDENTAL CHEMICAL CORPORATION and OCCIDENTAL PETROLEUM CORPORATION, Defendants-Appellees.
 Docket No. 03-7179.
 United States Court of Appeals, Second Circuit.
 Argued: December 10, 2003.
 Decided: January 23, 2004.
 
 Appeal from the United States District Court for the Western District of New York, Skretny, J.
 Mary E. Maloney, Maloney & Maloney, Niagara Falls, N.Y., for Plaintiffs-Appellants.
 Susan C. Roney, Nixon Peabody, LLP, Buffalo, N.Y., for Defendants-Appellees.
 Before: OAKES, NEWMAN, and KATZMANN, Circuit Judges.
 JON O. NEWMAN, Circuit Judge.
 
 
 1
 This appeal from the dismissal of a Title VII suit alleging racial discrimination in employment endeavors to assert a right of "interracial association" — the right of employees to enjoy association in the workplace with other employees selected without racial discrimination. The appeal is from the February 5, 2003, judgment of the District Court for the Western District of New York (William M. Skretny, District Judge), dismissing a suit brought by seven current or former African-American employees ("Appellants" or "Plaintiffs") against their employer, Occidental Chemical Corp. ("Occidental"). Judge Skretny dismissed the suit on motion for summary judgment, ruling that the Plaintiffs had not presented a prima facie case of a discriminatory hiring policy against job applicants, which the Plaintiffs alleged had resulted in the lack of a racially diverse workplace. Without assessing the correctness of that ruling, we conclude that, even if a right of interracial association in the workplace is cognizable under Title VII, the Plaintiffs cannot prevail for lack of any evidence creating a genuine issue of material fact as to whether they have been denied such association. We therefore affirm.
 
 Background
 
 2
 The Appellants, who are African-Americans, are or were employees of Occidental at its Niagara Falls, N.Y., facility. They brought suit against Occidental seeking injunctive relief, a declaratory judgment, and money damages for various alleged violations of federal and state anti-discrimination laws. They primarily alleged discrete acts of race and sex discrimination against themselves and a hostile work environment. In response to the Defendants' motion for summary judgment, the Plaintiffs conceded, both in reply papers and oral argument, that their claims for discrete acts of discrimination and hostile work environment could not survive summary judgment under National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), and other recent developments in employment discrimination case law. However, the Plaintiffs sought to resist summary judgment on their one remaining claim that Occidental's discriminatory hiring policy had deprived the Plaintiffs of the benefits of interracial association in the workplace, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (2000). In an order entered on February 5, 2003, the District Court disagreed. Judge Skretny ruled that the Plaintiffs had not presented a prima facie case of a discriminatory hiring policy against job applicants and did not reach the issue of whether the existence of such a policy would support a claim by the Plaintiffs for denial of a right of interracial association in the workplace. Because we resolve this appeal without consideration of whether the Plaintiffs have presented a prima facie case of a discriminatory hiring policy, we need not detail the Plaintiffs' allegations concerning Occidental's hiring policy.
 
 Discussion
 
 3
 We may affirm on any ground with support in the record, even if it was not the ground relied on by the District Court. See Headley v. Tilghman, 53 F.3d 472, 476 (2d Cir.1995) (citing Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937)). Accordingly, although the District Court rejected the Plaintiffs' interracial association claim for lack of evidence of a prima facie case that Occidental had rejected African-American applicants on a discriminatory basis, we will consider the viability of the interracial association claim without regard to whether potential co-workers were rejected on grounds that would have given such applicants valid Title VII claims.
 
 
 4
 Assertion of a denial of a right of interracial association has two components. Initially, the plaintiff makes a third-party claim that persons with whom he or she would like to associate have been excluded from the relevant context on the basis of racial discrimination. In addition, the plaintiff makes a first-party claim of denial of the benefits of associating, in a relevant context, with those who would have been included in the relevant context had they not been excluded because of a racially discriminatory selection process.
 
 
 5
 The Supreme Court first recognized the viability of a claim for denial of interracial association in Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972). The relevant context was housing, specifically an apartment complex housing about 8,200 residents. See id. at 206, 93 S.Ct. 364. The plaintiffs, residents of the complex, alleged that the owner of the complex had discriminated on the basis of race against prospective tenants in the rental of apartments in violation of section 810(a) of the Civil Rights Act of 1968, 42 U.S.C. § 3610(a). See id. at 206-07, 93 S.Ct. 364. The plaintiffs then alleged that this discrimination against potential tenants had caused them three specific injuries: (1) loss of the social benefits of living in an integrated community, (2) loss of business and professional advantages that would have developed from living with members of minority groups, and (3) embarrassment and economic damage from the stigma of living in what was characterized as a "white ghetto." See id. at 208, 93 S.Ct. 364.
 
 
 6
 Relying on the broad definition of "person aggrieved" in section 810(a), the Supreme Court accorded the plaintiffs standing to pursue their claims for "loss of important benefits from interracial associations," id. at 210, 93 S.Ct. 364, thereby implicitly permitting them to assert third-party claims of racial discrimination on behalf of potential tenants. Three Justices concurred specifically on the ground that the statute accorded standing that would have been doubtful under Article III in the absence of the statute. See id. at 212, 93 S.Ct. 364 (White, J., with whom Blackmun and Powell, JJ., join, concurring).
 
 
 7
 Several circuits have applied Trafficante to the workplace context, ruling that Title VII's phrase "person claiming to be aggrieved," 42 U.S.C. §§ 2000e-5, allows "third-party" standing to the fullest extent permitted by Article III's case or controversy requirement. See, e.g., Anjelino v. New York Times Co., 200 F.3d 73, 90, 91 & n. 25 (3d Cir.1999); EEOC v. Mississippi College, 626 F.2d 477, 481-83 (5th Cir. 1980) (cited in Leibovitz v. New York City Transit Authority, 252 F.3d 179, 186 n. 5 (2d Cir.2001)); Waters v. Heublein, Inc., 547 F.2d 466, 469 (9th Cir.1976); Gray v. Greyhound Lines, East, 545 F.2d 169, 175-76 (D.C.Cir.1976).
 
 
 8
 Our Court has not had occasion to decide whether Trafficante's allowance of so-called third-party standing is applicable to a claim of denial of a right of interracial association in the workplace in violation of Title VII. Occidental contends that we expressly rejected interracial association claims in Ad Hoc Committee of Concerned Teachers v. Greenburgh # 11 Union Free School District, 873 F.2d 25, 28 (2d Cir. 1989) ("Greenburgh"). Greenburgh does not resolve the issue in the Title VII context, however, because the associational claims in that case were grounded on the Equal Protection Clause of the Fourteenth Amendment, rather than a statute like Title VII. The Supreme Court has explicitly distinguished Constitution-based claims like those in Greenburgh from those with a statutory basis. See Warth v. Seldin, 422 U.S. 490, 513-14, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "Congress may create a statutory right or entitlement the alleged deprivation of which can confer standing to sue even where the plaintiff would have suffered no judicially cognizable injury in the absence of statute." Id. at 514, 95 S.Ct. 2197. "[T]he critical distinction between Trafficante and the situation [in Warth]" was that the plaintiff organization in Warth did "not assert on behalf of its members any right of action under the 1968 Civil Rights Act." Id. at 513. Warth confirms the concerns expressed by the concurring Justices in Trafficante. The pending case does not require us to decide whether Trafficante applies to a Title VII claim of denial of interracial association in the workplace because, in opposing the motion for summary judgment, the Plaintiffs failed to create a genuine issue of material fact as to whether the denial they alleged had occurred. They produced no data concerning the number of minority employees in Occidental's workforce or in the immediate area where they worked, thereby precluding any basis for determining whether their opportunity for interracial association was unduly limited. Moreover, unlike the tenants in Trafficante, the Plaintiffs presented no evidence that they were deprived of any benefits of interracial association or otherwise actually injured. Cf. Greenburgh, 873 F.2d at 28. This total failure of proof abundantly justified summary judgment for Occidental.
 
 Conclusion
 
 9
 The judgment of the District Court is affirmed.