VENTURA VILLAGE, INC., Bob O'Neal, Ira Mishow, Kathy Mishow, Amanda Martin, Carl Peterson, Helen Peterson, Jim Graham, Jan Graham, Jerry Beberg, Nicole Guise, Carlson Printing, Inc., Rajai Al–Barghouthi, and Mary Watson, Plaintiffs,

v.

CITY OF MINNEAPOLIS, Defendant.

and

Project For Pride In Living, Inc., Intervenor–Defendant.

No. Civ.02–3469(DSD/SRN).

United States District Court, D. Minnesota.

May 18, 2004.

Adam P. Gislason, Chad A. Snyder, Troy J. Seibert, and Zelle, Hofmann, Voelbel, Mason & Gette, Minneapolis, MN, for plaintiffs.

C. Lynne Fundingsland, Carol E. Lansing, Peter W. Ginder, and Minneapolis City Attorney's Office, Minneapolis, MN, for defendant.

Aaron C. Green, Minneapolis, MN and Christopher T. Shaheen, Jay R. Lindgren, Nick D. Campanario, Ryan E. Mick, Sara J. Peterson, and Dorsey & Whitney, Minneapolis, MN, for intervenor-defendant.

## ORDER

DOTY, District Judge.

This matter is before the court upon the parties' cross-motions for summary judgment. Based on a review of the file, record and proceedings herein, and for the reasons stated, the court denies plaintiffs' motion and grants defendants' motions.

## BACKGROUND

Plaintiffs are fifteen individual residents of the Ventura Village neighborhood in Minneapolis, Minnesota, one corporation with business operations located in the area and Ventura Village, Inc., the official "citizen participation group" for the neighborhood. Defendant–Intervenor Project for Pride in Living, Inc. ("PPL"), is a nonprofit organization "dedicated to helping low and moderate-income families develop the tools they need to achieve self-sufficiency." (PPL's Mem. Opp'n Pls.' Mot. Prelim. Inj. at 3.) The dispute arises from PPL's plan to build a twenty-unit "supportive housing facility," referred to as the "Collaborative Village Initiative" ("CVI"), in the Ventura Village neighborhood. As envisioned by PPL, CVI would provide "permanent homes for homeless families with one or more members who have a disability, including mental illness or substance abuse." (*Id.* at 4.)

"Supportive housing facility" is defined as "a facility that provides housing for twenty-four (24) hours per day and programs or services designed to assist residents with improving daily living skills, securing employment or obtaining permanent housing." Minneapolis, Minn., Code § 520.160 (2003). Pursuant to city zoning regulations, new supportive housing may not be located within one quarter mile from existing supportive housing, a community correctional facility, a community residential facility, inebriate housing, a motel or an overnight shelter. *See* Minneapolis, Minn., Code § 536.20 (2003). At the time PPL developed its CVI plan, Ventura Village was already home to nine supportive housing facilities operating within a quarter mile of PPL's proposed site. (Mem. Law Supp. Pls.' Mot. Summ. J. at 3.)

To overcome this hurdle, PPL applied to the Minneapolis City Planning Department on September 4, 2001, for variances and a conditional use permit. (Mick Aff. Ex. A at 1.) The department issued a report on October 9, 2001, recommending to the Minneapolis Planning Commission that CVI be approved. (*Id.* Ex. A at 27–28.) The commission adopted the recommendation of the planning department, and plaintiff Janet Graham appealed to the Zoning and Planning Committee of the Minneapolis City Council. (*Id.* Ex. C.) After a

hearing, the committee recommended that the full council affirm the determination of the planning commission on the ground that waiver of the spacing requirement was a "reasonable accommodation" required by the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. §§ 3601–3631.[1] (*Id.* Ex. C. at 2–3.)

On August 23, 2002, plaintiffs filed this lawsuit seeking declaratory and injunctive relief on the grounds that the City's action discriminated against them on the basis of race and handicap in violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601–3631,[2] and violated their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Plaintiffs complain that the City seeks to concentrate supportive housing in Ventura Village, leading to residential segregation of handicapped persons and people of color.

PPL timely filed a motion to intervene as a defendant. On October 17, 2003, plaintiffs moved for a preliminary injunction. The court denied the motion by order dated November 13, 2003. All three parties now move for summary judgment in their respective favors.

## DISCUSSION

### I. Standard for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *See id.* at 252, 106 S.Ct. 2505.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the non-moving party. *See id.* at 255, 106 S.Ct. 2505. The non-moving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. *See Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. *Id.* at 322–23, 106 S.Ct. 2548.

### II. Standing

■ At the outset, defendants suggest that plaintiffs lack standing to bring

---

**1.** The FHAA makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap of … a person residing in or intending to reside in that dwelling after it is so sold, rented, or made available." 42 U.S.C. § 3604(f)(1). The Act defines "discrimination" to include "a refusal to make reasonable accommoda-tions in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

**2.** For the sake of clarity, the court refers to the original Fair Housing Act and the 1988 amendments collectively as the "FHA."

their claims under the FHA. The doctrine of standing reflects an important constitutional limitation on the power of federal courts. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *County of Mille Lacs v. Benjamin,* 361 F.3d 460, 463 (8th Cir.2004). Under Article III, "[f]ederal courts only have jurisdiction to hear actual cases and controversies." *Benjamin,* 361 F.3d at 463 (citing U.S. Const. art. III, § 2, cl. 1). To satisfy the case or controversy requirement, the plaintiff must have suffered a particularized injury or be faced with the imminent threat of such an injury. *See Lujan,* 504 U.S. at 560, 112 S.Ct. 2130; *Benjamin,* 361 F.3d at 463–64. Further, the plaintiff's injury must be fairly traceable to the defendant's conduct. *See Benjamin,* 361 F.3d at 463–64. Finally, the injury must be such that it is likely to be redressed by a decision in the plaintiff's favor. *See id.* at 463–64. The court conducts its standing analysis mindful of the fact that " 'Congress intended standing under [the FHA] to extend to the full limits of Art. III.' " *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 372, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982) (quoting *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 103 n. 9, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)).

Focusing on plaintiffs' allegation that defendants have limited plaintiffs' ability to choose supportive housing outside Ventura Village, defendants argue that plaintiffs lack standing for their FHA claims because no plaintiff actually intends to move outside the neighborhood. Therefore, defendants conclude that no plaintiff has suffered an injury in fact. *Cf. Lujan,* 504 U.S. at 562–64, 112 S.Ct. 2130.

If that were the sole theory advanced by plaintiffs with respect to the City's alleged violation of the FHA, defendants might have a strong point. Plaintiffs, however, also allege that by approving CVI, "[t]he

City . . . has discriminated on the basis of race . . . by concentrating minority residents . . . in a small number of neighborhoods, including Ventura Village." (First Am. Compl. ¶ 47.) Plaintiffs make an identical allegation with respect to the City's alleged segregation of handicapped residents. (*Id.* ¶ 52.)

■ In enacting the FHA, Congress sought to establish " 'truly integrated and balanced living patterns' " in American neighborhoods. *Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 211, 93 S.Ct. 364, 34 L.Ed.2d 415 (1972) (quoting 114 Cong. Rec. 3422 (statement of Sen. Mondale)). The Act reflects the conclusion of Congress that important benefits flow from diverse personal associations. *Id.* at 210, 93 S.Ct. 364; *see also Jackson v. Okaloosa County, Fla.,* 21 F.3d 1531, 1539 (11th Cir.1994). It also recognizes that, by erecting a barrier to such associations, segregation injures all the members of a community. *See Trafficante,* 409 U.S. at 211, 93 S.Ct. 364. Therefore, courts have recognized that a plaintiff suffers injury in fact for standing purposes when a defendant's action results in segregation of the plaintiff's neighborhood, even though the action may not have been directed at the plaintiff. *See, e.g., Trafficante,* 409 U.S. at 212, 93 S.Ct. 364; *Jackson,* 21 F.3d at 1539–40; *Alschuler v. Dep't of Hous. & Urban Dev.,* 686 F.2d 472, 476–77 (7th Cir.1982); *Glendale Neighborhood Ass'n v. Greensboro Hous. Auth.,* 901 F.Supp. 996, 1000 (M.D.N.C.1995).

The court concludes that plaintiffs have averred an injury in fact sufficient to establish standing. While plaintiffs' complaint could have pleaded the effects of the City's alleged segregative actions with greater particularity, no further amendment is necessary to assure the court that this case is properly before it. *See* Fed. R.Civ.P. 8(a)(1) (requiring only "short and

plain statement of the grounds upon which the court's jurisdiction depends"); Fed. R.Civ.P. 8(f) (pleadings to be construed to do substantial justice). The court therefore examines the merits of plaintiffs' claims.

## III. FHA Claims

### A. Race Discrimination

The FHA provides that it shall be unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a). Plaintiffs allege that the City has violated the FHA by maintaining a policy of concentrating supportive housing in Ventura Village. (Mem. Law Supp. Pls.' Mot. Summ. J. at 11.) Plaintiffs contend that, because CVI's residents will mostly consist of disabled African–Americans, the City's policy of concentration disparately impacts people of color in Ventura Village by creating residential segregation. (*Id.* at 12.)

■ In a disparate impact case, the court first examines whether the plaintiff has established a prima facie case by showing that (1) the defendant maintains a facially neutral policy or practice which (2) has a significant adverse impact on members of a protected minority group. *See Oti Kaga, Inc. v. S.D. Hous. Dev. Auth.,* 342 F.3d 871, 883 (8th Cir.2003); *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown,* 294 F.3d 35, 52–53 (2d Cir.2002); *see also United States v. City of Black Jack, Mo.,* 508 F.2d 1179, 1184 (8th Cir.1974) (plaintiff must show defendant's conduct "actually or predictably results in racial discrimination").

■ Plaintiffs have failed to establish both elements of their prima facie case. First, plaintiffs have not shown that the City maintains a particular policy or prac-

tice with respect to supportive housing. Plaintiffs argue that, because nine supportive housing facilities already exist within a quarter-mile of Franklin and Elliot Streets in Ventura Village, the City's approval of CVI is evidence that it maintains a policy of concentrating supportive housing. That, however, is not the case.

In approving CVI, the City did not announce or establish a generally applicable policy with respect to the siting of supportive housing. Rather, it evaluated only the merits of the application before it. Although plaintiffs are unhappy about the outcome, they cannot convert their singular disappointment into a disparate impact claim without discussing how their case fits within the context of the City's other zoning decisions. *See City of Middletown,* 294 F.3d at 52–53.

In *City of Middletown,* a community action program sued a municipality under the FHA after the municipality denied its application for a special use permit to construct a halfway house. *See id.* at 42–44. Examining the plaintiffs' FHA claim, the United States Court of Appeals for the Second Circuit observed that " '[a] disparate impact analysis examines a facially-neutral policy or practice, such as a hiring test or zoning law, for its differential impact or effect on a particular group.' " *Id.* at 52 (quoting *Huntington Branch, N.A.A.C.P. v. Town of Huntington,* 844 F.2d 926, 933 (2d Cir.1988)). The court reasoned that, where a plaintiff challenges a specific governmental act, "[n]o comparison of the act's disparate impact on different groups of people is possible." *Id.* at 53. Because the plaintiffs challenged the discrete act of the municipality in denying the special use permit, the court held that the plaintiffs had failed to establish a disparate impact claim. *Id.* at 53.

Here, as in *City of Middletown,* plaintiffs challenge a single act undertaken by

the City: the approval of CVI. Standing alone, that decision necessarily impacts only two distinct groups. It affects PPL and its constituents, who are allowed to move forward with the project, and it affects the citizens of Ventura Village who will be CVI's new neighbors. Thus, as in *City of Middletown*, the court cannot compare the impact of CVI's approval on different groups of people. Plaintiffs therefore fail to establish the "policy or practice" element of their disparate impact claim.

Even assuming that plaintiffs could show that the City has established a policy or practice regarding the siting of supportive housing, plaintiffs have not brought forth any evidence of a significant adverse impact on people of color. In fact, plaintiffs do not dispute that more than half of the supportive housing projects approved by the City in the last nine years have been constructed in predominantly white neighborhoods. (Anderson Aff. ¶ 10.) Plaintiffs have therefore failed to establish a prima facie case of disparate impact discrimination.[3] Accordingly, defendants are entitled to summary judgment on plaintiffs' FHA claim.

### B. Handicap Discrimination

For the same reasons that plaintiffs' race discrimination FHA claims fails, their handicap discrimination claim also must fail. Plaintiffs' claim does not attack a general policy or practice of the City. Even if it could be construed to do so, plaintiffs have produced no evidence that the purported policy differentially impacts handicapped citizens. Summary judgment on plaintiffs' FHA handicap discrimination is therefore appropriate.[4]

### IV. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment makes it unlawful for state government officials to discriminate on the basis of race. *See Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). To establish an equal protection violation, a plaintiff must provide proof of a racially discriminatory intent or purpose on the part of the governmental decisionmaker. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). Such evidence may be direct or circumstantial. *See id.* at 266, 97 S.Ct. 555. Courts typically should examine any disparate impact of the decision, the historical background of the decision, the sequence of events leading to the decision, departures from regular procedure and the legislative or administrative history. *See id.* at 267–68, 97 S.Ct. 555.

Plaintiffs claim that the City has violated their equal protection rights because "[i]t disregards the ... spacing requirement in predominantly non-white

---

3. The court also notes that plaintiffs could not establish a case of disparate treatment discrimination. Such a claim would require proof that the City enforced the spacing requirement in another neighborhood despite a request for a reasonable accommodation under the FHA. *See Oti Kaga*, 342 F.3d at 882–83 (disparate treatment claim requires proof that plaintiff was treated differently from another similarly situated). Plaintiffs, however, do not cite a single case where the City has refused to waive the spacing requirement despite an applicant's claim that waiver was necessary as a reasonable accommodation.

4. Congress intended the FHA to abolish zoning practices which had "the effect of limiting the ability of [handicapped persons] to live in the residence *of their choice* in the community." H.R.Rep. No. 100–711, at 24 (1988), *reprinted in* 1998 U.S.C.C.A.N. 2173, 2185 (emphasis added). Therefore, as a general matter, it is quite doubtful that FHA empowers handicapped persons to go to court and force zoning authorities to exclude other handicapped persons seeking to live in their neighborhoods.

neighborhoods, and enforces it in predominantly white neighborhoods." (Am. Compl.¶ 37.) Plaintiffs have not, however, brought forth sufficient evidence to create a genuine issue of material fact as to whether the City's waiver of the spacing requirement in this case was intended to discriminate against people of color.

Plaintiffs bring forth no historical evidence of discrimination in the City's application of the spacing requirement. Indeed, as noted earlier, plaintiffs agree that more than half of the supportive housing projects approved by the City in the last nine years have been constructed in white majority neighborhoods. (Anderson Aff. ¶ 10.)

Nor do plaintiffs offer evidence of any meaningful procedural irregularities in the City's consideration of the CVI project. CVI was reviewed by the City's planning department, which passed its report on to the city planning commission. After the commission approved CVI, plaintiff Graham appealed to the zoning and planning committee of the city council. Following a public hearing, the committee recommended that the full council affirm the determination of the commission. The council agreed, and CVI was allowed to go forward.

Finally, plaintiffs have provided no evidence of discrimination in the legislative and administrative history of the various proceedings before the city administration and council. Looking at the record as a whole, there is simply no evidence from which a reasonable juror could conclude that the City approved CVI out of an intent to discriminate against people of color. Accordingly, plaintiffs' equal protection claim must fail.

5. Because plaintiffs have produced no evidence of racial animus or procedural irregularity, the court cannot agree with them that the "truly irrational" standard is inapplicable.

## V.  Due Process Claim

Finally, plaintiffs allege that the City's approval of CVI denied them due process of law. Because the complaint does not specify whether plaintiffs' claim is substantive or procedural, the court will analyze the claim under both theories.

■■■■ The procedural component of the Due Process Clause requires that, before a citizen is deprived of an interest in property by government action, the citizen must be given "notice of the proposed government action and an opportunity to be heard." *Anderson v. Douglas County*, 4 F.3d 574, 578 (8th Cir.1993) (citing *Littlefield v. City of Afton*, 785 F.2d 596, 603 (8th Cir.1986)). Assuming that CVI affects a property interest of the plaintiffs, the record establishes that plaintiffs had ample opportunity to voice their concerns regarding the project throughout the City's approval process. Plaintiffs therefore fail to establish a procedural due process claim.

■■■ The substantive component of due process is violated only when a zoning authority's decision is truly irrational. *See Anderson*, 4 F.3d at 577 (quoting *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102 (8th Cir.1992)).[5] As discussed above, plaintiffs have not produced evidence that, based on the record before it, the City was irrational to conclude that a rejection of the CVI project would violate the FHA's reasonable accommodation requirement. Defendants are therefore entitled to summary judgment on plaintiffs' due process claim.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

*See Chesterfield*, 963 F.2d at 1104 (quoting *Creative Env'ts, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir.1982)).

1. Plaintiffs' motion for summary judgment [Docket No. 37] is denied.

2. Defendants' motions for summary judgment [Docket Nos. 45 & 53] are granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**